**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Woodcraft Industries, Inc.,

Plaintiff,

v.

JBA International, Inc. and
GEAC Enterprise Solutions, Inc.,

Defendants.

Civil No. 01-373 (DWF/RLE)

**MEMORANDUM OPINION AND ORDER**

---

Michael E. Florey, Esq., Fish & Richardson, 3300 Dain Bosworth Plaza, 60 South 6th Street, Minneapolis, Minnesota 55402, appeared on behalf of Plaintiff.

James E. Dorsey, Esq., Fredrikson & Byron, 1100 International Center, 900 Second Avenue South, Minneapolis, Minnesota 55402-3787, appeared on behalf of Defendant JBA International, Inc.

Peter M. Lancaster, Esq., and Robert L. Jacobson, Esq., Dorsey & Whitney, Pillsbury Center South, 220 South 6th Street, Minneapolis, Minnesota 55402, appeared on behalf of Defendant GEAC Enterprise Solutions, Inc.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on June 1, 2001, pursuant to Defendants' individual motions to dismiss. In the Complaint, Plaintiff alleges against both Defendants claims of: (1) breach of contract; (2) breach of warranty; (3) fraudulent misrepresentation; and (4) negligent misrepresentation. By its current motion, Defendant JBA International, Inc. seeks to dismiss the claims of negligent and fraudulent misrepresentation, while Defendant GEAC Enterprise Solutions, Inc. seeks to dismiss all counts against it. For the reasons set forth below, Defendant JBA International, Inc.'s motion

FILED JUN 14 2001
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

is granted in part and denied in part, and Defendant GEAC Enterprise Solutions, Inc.'s motion is granted in part and denied in part.

**Background**

Plaintiff Woodcraft Industries, Inc. ("Woodcraft") is a custom cabinet-maker. In September 1998, Woodcraft entered into negotiations with Defendant JBA International, Inc. ("JBA") for the purchase of a software system customized to Woodcraft's business. JBA's Enterprise Resource Planning ("ERP") software, System 21, did not contain a "configurator" or a "finite scheduler," two components for which Woodcraft alleges it expressed a need. Woodcraft also contends that JBA representatives recommended the Trilogy configurator and a finite scheduler called S-Plan, maintaining that JBA was partnered with both manufacturers and that both products would effectively interface with System 21. Woodcraft alleges that such representations were made by JBA representatives such as Steve Pickrel, Tim Mahoney, and Tom Dziersk in meetings at Woodcraft and via telephone conversations during the sales period.

In March 1999, JBA and Woodcraft entered into a contract whereby Woodcraft purchased consulting services from JBA and software licenses for System 21, the Trilogy configurator, and the S-Plan. The Woodcraft-JBA contract included an integration clause which stated in relevant part that:

> **JBA GENERAL TERMS AND CONDITIONS**
> MUTUAL UNDERTAKINGS
> 1) CONTENT AND EFFECT
> a) This Agreement, including all Schedules, Exhibits and any Addendum executed by the parties hereto, constitutes the entire and complete agreement between the parties, and supersedes all prior or, contemporaneous agreements, representations, statements or undertakings between the parties, whether written or oral. All terms and conditions of any purchase order or other ordering document of the Customer shall be superseded by the terms and conditions of this Agreement. . . .

In addition, the S-Plan licensing agreement signed by Woodcraft on April 4, 2000, contained an integration clause which stated in paragraph 12 that: "This License Agreement constitutes the entire understanding and agreement between the parties with respect to the subject matter hereof and shall supersede any prior agreements or understandings between the parties with respect to the subject matter hereof."

In its Complaint, Woodcraft outlines a planning and implementation schedule by which the non-manufacturing features, including System 21, would be functioning by October 1999 and the manufacturing features, including the Trilogy configurator and the S-Plan, would be operational by July 2000. Woodcraft alleges, however, that to date neither the Trilogy configurator nor the S-Plan scheduler interfaces effectively with System 21 and thus gives rise to its claims.

In Paragraph 16 of its Complaint, Woodcraft alleges that "[i]n September of 1999, GEAC Computer Corporation Ltd. acquired JBA International, Inc. On information and belief, the former JBA operations became part of GEAC Enterprise Solutions, Inc., which is GEAC's ERP business in North America. (JBA will hereinafter be referred to as "GEAC")." Defendant GEAC Enterprise Solutions, Inc. ("GEAC Enterprise") contends, however, that Woodcraft has presented no evidence in support of such an allegation and, rather, the evidence is to the contrary. While Defendant GEAC Enterprise acknowledges that GEAC Computer Corporation Ltd. ("GEAC Computer") did acquire JBA in September 1999, it maintains that JBA is seven degrees of separation away from GEAC Enterprise on the GEAC Computer corporate family tree.

The current motions before the Court are Defendant JBA's motion to dismiss claims of negligent and fraudulent misrepresentation and Defendant GEAC Enterprise's motion to dismiss all claims.

## Discussion

### 1. Standard of Review

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Nietzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

### 2. Issues

#### a. Counts I and II Against Defendant GEAC Enterprise

As cited above, Woodcraft has alleged in Paragraph 16 of its Complaint that upon GEAC Computer's acquisition of JBA, "the former JBA operations became part of [GEAC Enterprise]." Defendant GEAC Enterprise maintains that this allegation and the continued reference to GEAC as opposed to JBA throughout the remainder of the Complaint amount to little more than a "linguistic substitution." The Court disagrees.

In *In re Milk Products Antitrust Litig.*, 84 F. Supp. 2d 1016, 1025-26 (D. Minn. 1997), Chief Judge Magnuson addressed the question of whether "successor in interest" and "majority owner" liability were sufficiently alleged in a complaint against a corporation that had acquired another defendant corporation. In addition to the state law provision requiring that successor liability be outlined in a contract or agreement between the transferee and transferor, Chief Judge

Magnuson outlined four exceptions where a court could also find successor liability: "(1) when the successor corporation expressly or impliedly agreed to assume such responsibilities; (2) when the acquisition amounts to a merger of the corporation; (3) when the successor corporation is merely a continuation of the purchased corporation; and (4) when the purpose of the transaction is to fraudulently escape liability for debts." *Id.* at 1025 (citations omitted). Chief Judge Magnuson found that the *In re Milk* plaintiffs had insufficiently alleged successor liability when they relied solely on the acquisition of one company by the other.

While Plaintiff does not use certain exact terms in its Complaint, such as merger or assumption, it does provide sufficient descriptive allegations to assert a theory of successor liability under any of the first three exceptions listed above. Separate from the acquisition of JBA by GEAC Computer, Plaintiff makes the additional allegation that JBA became "a part of" GEAC Enterprise, the very division of GEAC Computer devoted to the same ERP industry as JBA. From these statements, the Court finds that Plaintiff has sufficiently alleged a relationship between JBA and GEAC Enterprise by which, if true, it could be established that GEAC Enterprise assumed the JBA contract responsibilities relevant to this case, and such that GEAC Enterprise could be found potentially liable for Counts I and II, breach of contract and breach of warranty.

While not outlined in the Complaint but as support for its allegation, Plaintiff points to two GEAC Computer press releases and several actions and correspondence by GEAC Enterprise in dealings with the Woodcraft-JBA contract subsequent to the acquisition. In June 2000, GEAC Computer issued two press releases pertaining to the acquisition of JBA.

> **8th June 2000** - Geac Computer Corporation Limited, today announces the name change of its ERP operation divisions across Europe to Geac Enterprise Solutions, to include all its enterprise business offerings.

> Geac Enterprise Solutions will now incorporate all former product offerings from JBA (System21, Presys, Ratioplan) . . .
>
> **June 26, 2000** - Geac Computer Corporation Limited (TSE:GAC) has solidified its enterprise systems presence in North America by consolidating its various North American ERP operations into one business unit - Geac Enterprise Solutions. Headquartered in Atlanta, Geac Enterprise Solutions now incorporates all former product offerings from . . . Geac/JBA (System21 and Style) . . ..
> ***
> **About Geac Enterprise Solutions**
> Geac Enterprise Solutions, a division of Geac Computer Corporation Ltd., provides mid- to large-sized enterprises Web-enabled, advanced financial, human resources and business intelligence ERP solutions. Geac's multiple platform client/server (SmartStream and SQL Financials/HR), PC/LAN (TotalHR), mainframe (E Series and M Series) and AS/400 (System21 and Style) product suites enable organizations to streamline business processes and enhance information access throughout their enterprises.

In addition, Plaintiff identifies two letters subsequent to the acquisition of JBA where GEAC corresponds with Woodcraft in regard to the contract at issue. While the Court does not rely on such evidence outside the Complaint in order to reach a decision on the current motion, such evidence does indicate that discovery promises to provide evidence that will serve to illustrate whether Plaintiff's theory of successor liability is viable or not.

If in fact successor liability is established here, Defendant GEAC Enterprise's liability would be direct and would not require the indirect liability for a descendant corporate entity provided under the corporate veil theory. The Court is not convinced that the GEAC Computer family tree relied upon by Defendant GEAC Enterprise eliminates all questions of the relationship between GEAC Enterprise and JBA as Defendant GEAC Enterprise would have the Court believe, particularly in terms of their corporate activities and responsibilities. Nonetheless, based on Plaintiff's theory of successor liability, Defendant's arguments against "piercing the corporate veil" are unavailing.

For the reasons stated, the Court finds that Counts I and II are properly alleged against Defendant GEAC Enterprise.

**b. Counts III and IV Against Defendants JBA and GEAC Enterprise**

Both Defendants also challenge Plaintiff's claims of fraudulent and negligent misrepresentation. The Court finds that there is no sufficient basis for either claim of misrepresentation against Defendant GEAC Enterprise. However, the Court finds that if true, the relevant facts alleged in the Complaint could support a claim of fraudulent misrepresentation against Defendant JBA.

**i. Fraudulent Misrepresentation**

Defendants' argument that Plaintiff has failed to plead its claim of fraudulent misrepresentation with sufficient particularity is without merit. Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity." "'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (citations omitted). The particularity requirement is intended to provide a defendant with sufficient notice of the claims against which it must defend. *Id.*

In its Complaint, Plaintiff clearly identified the salespersons who made the alleged misrepresentations (*e.g.*, Steve Pickrel, Tim Mahoney, and Tom Dziersk), the nature of the alleged misrepresentations (*i.e.*, the programs would interface and JBA was partnered with the program manufacturers), the context in which the alleged misrepresentations were made (meetings at Woodcraft, telephone calls, and correspondence), and the time period during which they were made (sales cycle). In fact, Plaintiff specifically refers to at least one alleged

misrepresentation by quoting from a February 24, 1999, letter to Woodcraft from Steve Pickrel of JBA. With respect to Defendant GEAC Enterprise, Plaintiff clearly alleges liability based upon the alleged assumption by GEAC Enterprise of JBA's contract liability. Irrespective of whether Plaintiff's claim of fraudulent misrepresentation is viable on other grounds, the Court finds that Plaintiff has provided fair and sufficient notice to Defendants so that they are fully aware of the nature and scope of the claims against them and that they may effectively defend against such claims.

In Minnesota, courts have held that a claim of fraudulent misrepresentation with respect to a written contract is viable except where the contract explicitly states "a fact completely antithetical to the claimed misrepresentations." *Commercial Prop. Inv. v. Quality Inns Int'l Inc.*, 938 F.2d 870, 875 (8th Cir. 1991) (citing *Clements Auto Co. v. Serv. Bureau Corp.*, 444 F.2d 169, 179 (8th Cir. 1971)); *see also Hanks v. Hubbard Broadcasting, Inc.*, 493 N.W.2d 302, 310 (Minn. Ct. App. 1992) ("When a promise is not in plain contradiction of a contract, the question of legal reliance is for the trier of fact."). Moreover, the mere existence of an integration clause does not necessarily preclude a claim of fraud nor negate a finding of reliance upon the alleged misrepresentations. *Quality Inns*, 938 F.2d at 875; *Hanks*, 493 N.W.2d at 310 ("[A] full integration clause does not prevent proof of fraudulent representations by a party to a contract.") (citations omitted).

In the instant case, Plaintiff has alleged that Defendant JBA fraudulently represented that System21 would effectively interface with the Trilogy configurator and the S-Plan. Plaintiff maintains that such representations were made in response to its requirements that an ERP system provide the scheduler and configurator functions ultimately available through the Trilogy and S-Plan products. By implication, but for JBA's guarantees that the three elements would

effectively interface with each other, Woodcraft would not have agreed to the purchasing contract negotiated with JBA. Furthermore, the alleged misrepresentations are not contradictory to the provisions of the written agreement between Woodcraft and JBA. Instead, the allegation that the three elements were represented to interface effectively is consistent with their simultaneous purchase. The general disclaimer and integration clause is so sweeping that it does not serve to preclude Plaintiff's claim of reliance on allegedly fraudulent misrepresentations. Neither the integration clause nor any other provision of the contract specifically addresses the issue of whether the three products will interface, and thus does not clearly contradict the alleged misrepresentations identified by Plaintiff. For these reasons, the claim of fraudulent misrepresentation as it has been plead against Defendant JBA remains viable.

However, to the extent that the claim of fraudulent misrepresentation has also been alleged against Defendant GEAC Enterprise, it must fail. In order to establish an actionable claim of fraud under Minnesota law, a plaintiff must show that the defendant:

> made a false representation of a past or existing material fact, susceptible of knowledge, knowing it to be false or without knowing whether it was true or false, with the intention of inducing the person to whom it was made to act in reliance upon it or under such circumstances that such person was justified in so acting and was thereby deceived or induced to so act to his damage.

*Quality Inns*, 938 F.2d at 877 (citing *Berryman v. Reigert*, 175 N.W.2d 438, 442 (1970)). Plaintiff has made no allegation that GEAC Enterprise or any division of GEAC Computer made any representations to Woodcraft upon which it relied in entering the contract at issue. To the extent that Plaintiff has set forth a theory of successor liability, such an argument cannot encompass alleged misrepresentations made significantly prior to the point at which any division of GEAC became involved in the current matter. Thus, a claim of fraudulent misrepresentation against Defendant GEAC Enterprise is without merit and is dismissed with prejudice. Indeed,

based upon the same reasoning, *i.e.*, no GEAC representative of any of its decisions has been alleged to have made any of the alleged misrepresentations at issue, no claim of negligent misrepresentation can stand against Defendant GEAC Enterprise as well.

**ii. Negligent Misrepresentation**

In order to establish a claim of negligent misrepresentation, a plaintiff must show that the defendant has failed to communicate "certain information that the ordinary person in his or her position would have discovered or communicated." *Safeco Ins. Co. of America v. Dain Bosworth Inc.*, 531 N.W.2d 867, 870 (Minn. Ct. App. 1995) (citing *Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986)). This duty of care is assigned to one who by making representations "[supplies] information for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment." *Id.* If no such duty of care exists, then a party is held only to a duty of honesty, for which any breach could be recovered in contract or by a claim of fraudulent or intentional misrepresentation. *Id.* at 871. Therefore, in order for Woodcraft's claim of negligent misrepresentation to remain viable against Defendant JBA, the Court must find that the relationship between the parties was such that JBA owed a duty of care.

The Court finds that no special relationship existed between the parties such that JBA should be held to a duty of care. While Woodcraft and JBA clearly operate within two distinct fields of industry, the fact remains that they were sophisticated commercial consumers who negotiated the relevant contract at "arm's length." Indeed, Woodcraft states in its Complaint that it implemented a Request for Proposal process and interviewed several ERP software consultants, in addition to JBA. Moreover, the parties refer to a months-long "sales cycle" that involved numerous meetings and communications between the parties, including opportunities

during which Woodcraft set forth its "requirements for an ERP system." In the end, Woodcraft selected JBA to provide the services and products it sought. While it is true that JBA provides a product with which Woodcraft cannot provide itself, there is no indication that Woodcraft is not a sophisticated adversary capable of negotiating a contract to serve and protect its interests. Rather, the asserted facts relating to its interviewing and selection process indicate directly to the contrary. For these reasons, the Court finds that Defendant JBA owed no duty beyond honesty and thus should not be held liable under a claim of negligent misrepresentation.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Defendant JBA International, Inc.'s Motion to Dismiss (Doc. No. 4) is **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant GEAC Enterprise Solutions, Inc.'s Motion to Dismiss (Doc. No. 11) is **GRANTED IN PART** and **DENIED IN PART**;

3. Count III as it relates to Defendant GEAC Enterprise Solutions Inc. is **DISMISSED WITH PREJUDICE**; and

4. Count IV as it relates to both Defendants GEAC Enterprise Solutions, Inc. and Defendant JBA International, Inc. is **DISMISSED WITH PREJUDICE**.

Dated: June 14, 2001

DONOVAN W. FRANK
Judge of United States District Court